No. 95-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


DAVID MAURER,

      Plaintiff, Appellant,
and Cross-Respondent,

  v.

CLAUSEN DISTRIBUTING CO., a Montana
corporation, and MICHAEL A. TUCKER,

      Defendants, Respondents,
and Cross-Appellants.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

        Monte D. Beck and John J. Richardson,
Beck Law Offices, Bozeman, Montana

     For Respondents:

        Keith Keller, Keller, Reynolds, Drake,
Johnson & Gillespie, Helena, Montana

FILED

FEB 8 1996

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  January 4, 1996

Decided:  February 8, 1996

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from an order of the First Judicial District Court, Lewis and Clark County, granting a new trial on the jury's award of damages against Clausen Distributing Co. and Michael A. Tucker, and a cross-appeal from the District Court's exclusion of evidence and giving of jury instructions. We reverse in part and affirm in part.

We restate the issues as follows:

1. Did the District Court err in ordering a new trial on the issue of punitive damages?

2. Did the District Court err in ordering a new trial on the issue of compensatory damages?

3. Did the District Court err in excluding evidence of events other than the accident that could have lead to Maurer's depression?

4. Did the District Court err in denying a new trial on the issue of punitive damages because evidence of Clausen's employees' work-related convictions for driving under the influence (DUIs) was excluded?

5. Did the District Court err in denying a new trial because instructions were given to the jury on Clausen's vicarious liability for punitive damages?

FACTS

Michael Tucker was a salesperson for Clausen Distributing Co., a Helena beverage and bar supply wholesaler and distributor. On November 25, 1991, Tucker was returning from his Townsend sales

2

route when he ran into the rear of a Montana Highway Patrol vehicle parked on the side of the highway. David Maurer, a motorist who had been stopped by the patrolman, was sitting in the front passenger seat of the patrol car and was injured when he was thrown to the floor of the car.

Tucker pled guilty to a charge of driving while under the influence of alcohol. His blood alcohol content over an hour after the accident was .17 percent. Defendants Clausen and Tucker admitted liability for the accident and a trial was held to award compensatory damages and determine liability for punitive damages. At trial, Tucker testified that he drank five or six beers that day while he was servicing his Townsend customers. Clausen's policy permitted salespersons to use their discretion in consuming alcohol while working. Clausen did not amend this policy as it pertained to Tucker, even though Clausen was aware that Tucker had received two citations for DUIs prior to this accident.

As a result of the accident, Maurer suffered pain in his neck and back which he alleged prevented him from performing duties essential to running a ranch. Maurer became severely depressed, quit the family ranch, and moved from Montana. Clausen and Tucker attempted to introduce evidence of non-related felony charges against Maurer which could have caused his depression and disrupted his established course of life. The District Court did not allow the evidence because of its prejudicial effect.

Clausen also attempted to introduce evidence that no Clausen driver had, until this accident, received a DUI while working. The

3

District Court excluded this evidence, finding it was not relevant to the issue of punitive damages.

At the proposal of jury instructions, the District Court ruled that a pattern instruction on vicarious liability would be given. Clausen objected to the giving of this instruction.

The jury awarded $1,000,000 in punitive damages against Clausen and $75,000 in punitive damages against Tucker. Clausen filed a motion for a new trial and the District Court concluded that the jury's awards for punitive damages were based on passion and prejudice and exceeded the amount necessary to punish Clausen and Tucker. Accordingly, the District Court ordered a new trial on the determination of punitive damages.

The jury also awarded Maurer $570,349 in actual damages, $500,000 of which was for loss of established course of life, and $50,000 for pain and suffering. Maurer had requested $90,000 for loss of established course of life. Although requested by Maurer, the jury did not award any damages for loss of earnings or loss of earning capacity. The District Court concluded that the jury's award for compensatory damages was excessive and granted a new trial on the issue of compensatory damages as well.

Maurer appeals the District Court's granting of a new trial on the issues of punitive and compensatory damages. Clausen and Tucker cross-appeal the District Court's evidentiary and legal rulings relevant to a new trial.

ISSUE 1

Did the District Court err in ordering a new trial on the issue of punitive damages?

The District Court vacated the jury's award for punitive damages of $1,000,000 against Clausen and $75,000 against Tucker. The District Court ordered a new trial because it concluded that these awards were excessive. This Court will not disturb a district court's decision to grant or deny a new trial absent a manifest abuse of discretion. Baxter v. Archie Cochrane Motors, Inc. (1995), 271 Mont. 286, 287-88, 895 P.2d 631, 632.

Section 25-11-102(5), MCA, provides that a district court may vacate a jury's verdict and grant a new trial when the jury's award of damages is excessive and appears to have been given under the influence of passion or prejudice. As required by § 27-1-221(7)(c), MCA, the District Court reviewed the jury's verdict and considered the factors set forth in subsection (7)(b). Those factors include:

> (i) the nature and reprehensibility of the defendant's wrongdoing;
> (ii) the extent of the defendant's wrongdoing;
> (iii) the intent of the defendant in committing the wrong;
> (iv) the profitability of the defendant's wrongdoing, if applicable;
> (v) the amount of actual damages awarded by the jury;
> (vi) the defendant's net worth;
> . . . .
> (ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

The court found that Clausen had a net worth of $944,534 in 1993 and taxable income of $31,662 (average for 1990 to 1993). The court found that Tucker had no evidence of net worth but that he had been rehired by Clausen at a yearly salary of $27,000. Based on those findings, the court concluded:

> Although an award of punitive damages was proper in this case, it appears that the award was the result of passion or prejudice. Passion and prejudice can, of course, be strong when drinking and driving result in an accident. The significant factor here, however, is the excessive amount of the award.
>
> There was no evidence regarding Tucker's net worth. The award against him was almost three times his annual salary. While Tucker's conduct was certainly reprehensible and should in no way be condoned, the amount awarded exceeds the amount necessary to punish him.
>
> The amount awarded against Clausen Distributing exceeded the company's net worth. The award must be sufficient to get the company's attention, but in this case, the award exceeds the amount necessary to adequately punish this Defendant and to serve as an example to it and others.

A review of the record reveals that the punitive damages assessed against Clausen were not excessive when compared to Clausen's overall financial condition. Section 27-1-221(7)(a), MCA, states that "[i]n the separate proceeding to determine the amount of punitive damages to be awarded, the defendant's financial affairs, financial condition, and net worth must be considered." We note that Clausen declared taxable income of $0 to $49,000 between 1990 and 1993, even though its yearly sales were between $3,400,000 to $4,600,000. Actually, Clausen had a policy of retaining profits within the corporation. Clausen's general manager testified that Clausen's yearly retained profits averaged

6

between $850,000 and $1,000,000. In addition, Clausen kept $300,000 to $400,000 in cash on hand for expenditures. Clausen's balance sheet valued many of the company's assets at their historic cost when purchased up to thirty-five years ago. Testimony was presented that at this time the warehouse alone is worth between $550,000 and $800,000. Nevertheless, the District Court failed to consider the appreciation of these assets, as well as Clausen's policy of retaining profits, which resulted in a decrease of the company's taxable income.

Tucker's financial condition was also valued improperly by the District Court. After noting there was no evidence of Tucker's net worth, the District Court concluded that Tucker's salary did not support an award of punitive damages in the amount of $75,000. In Gurnsey v. Conklin Co., Inc. (1988), 230 Mont. 42, 55, 751 P.2d 151, 158, we stated a plaintiff is not required to show proof that a defendant's net worth supports an award of punitive damages. If the defendant's net worth does not support an award of punitive damages, the defendant must produce evidence to that fact. Gurnsey, 751 P.2d at 158. Tucker should not gain an advantage from failing to produce evidence of his net worth. Accordingly, there was no evidence that Tucker's net worth could not support a punitive damage award of $75,000, and so, the District Court erred in vacating the jury's award of punitive damages against Tucker.

For these reasons, we conclude that the District Court's order for a new trial on the issue of punitive damages was a manifest

7

abuse of discretion, and therefore, reverse the District Court on this issue.

## ISSUE 2

Did the District Court err in ordering a new trial on the issue of compensatory damages?

The issue of damages was submitted to the jury on a line item verdict form. Maurer asked the jury to return a verdict of:

| | |
|---|---|
| Past medical expenses | $    12,598.80 |
| Future medical expenses | 20,000.00 |
| Out-of-pocket expenses | 440.00 |
| Pain and suffering | 65,520.00 |
| Loss of established course of life | 90,000.00 |
| Loss of earnings | 35,642.00 |
| Loss of earning capacity | 2,241,761.00 |

The jury returned a verdict of:

| | |
|---|---|
| Past medical expenses | $    12,598.80 |
| Future medical expenses | 7,310.50 |
| Out-of-pocket expenses | 440.00 |
| Pain and suffering | 50,000.00 |
| Loss of established course of life | 500,000.00 |
| Loss of earnings | -0- |
| Loss of earning capacity | -0- |

The District Court noted that the jury's award for loss of established course of life was more than five times the amount requested by Maurer. On these facts, the court concluded that an award of $500,000 for loss of established course of life was excessive and appeared to have been given under the influence of passion or prejudice. Accordingly, the court ordered a new trial on compensatory damages pursuant to § 25-11-102(5), MCA. We will review the court's decision to grant a new trial to determine if the court abused its discretion. See Baxter, 895 P.2d at 632.

8

Maurer attempts to justify the jury's award for his loss of established course of life by pointing to the fact the jury awarded less compensation as a whole than was requested. This justification is fallacious. The jury's award for Maurer's loss of established course of life cannot be considered as damages to offset the jury's refusal to award damages for Maurer's loss of earnings and earning capacity. On the contrary, the jury found that Maurer suffered no loss of earning capacity.

Maurer produced evidence to support an award of $90,000 for loss of established course of life. Instead, the jury awarded $500,000. Unreasonable damages cannot be recovered. Section 27-1-302, MCA. Thus, an award must be reduced when it substantially exceeds that which the evidence can sustain. Safeco Ins. Co. v. Ellinghouse (1986), 223 Mont. 239, 254, 725 P.2d 217, 226. The record does not support the jury's award of $500,000 for loss of established course of life. Therefore, the District Court did not abuse its discretion in ordering a new trial for compensatory damages on this issue and we affirm that portion of the District Court's order.

## ISSUE 3

Did the District Court err in excluding evidence of events other than the accident that could have lead to Maurer's depression?

During trial, Maurer produced evidence that after the car accident he was depressed. This depression lead Maurer to leave the family ranch and contributed to his "course of life" damages.

9

Clausen and Tucker attempted to introduce evidence that Maurer became depressed and left the ranch because of other reasons. Specifically, an event occurred in August 1990 where Maurer's former girlfriend's neck was broken during an altercation with him and which resulted in her being rendered quadriplegic (the Miller incident). In December 1990, she filed a civil suit against him which was settled in August 1991. In addition, Maurer was criminally charged with aggravated assault, a felony. Following a jury trial he was acquitted from the felony charge in January 1993.

Maurer claims the evidence was inadmissible because the defendants offered no proof linking Maurer's psychological condition with the Miller incident and that the defendants merely wanted to ask a highly prejudicial question. The defendants counter that the incident's link to Maurer's depression was self-evident and that the jury could consider the evidence from a common sense viewpoint. The District Court acknowledged the significant stress of the incident and its resulting criminal charges. Nevertheless, the court excluded the evidence because of its prejudicial nature.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, M.R.Evid. The decision whether or not to exclude such evidence will not be reversed by this Court unless the district court has abused its discretion. Newville v. State, Dept. of Family Svcs. (1994), 267 Mont. 237, 260, 883 P.2d 793, 806

10

(citing Kimes v. Herrin (1985), 217 Mont. 330, 333, 705 P.2d 108, 110).

We conclude that the Miller incident was certainly a stress provoking event which may have contributed to Maurer's depression and its probative value was not substantially outweighed by its prejudicial nature. We further conclude that the District Court abused its discretion in excluding evidence of the Miller incident for that reason. The jury should have been given the opportunity to determine to what degree, if any, the stress from the Miller incident contributed to Maurer's loss of established course of life. See § 26-1-202, MCA.

The defendants intended to introduce evidence of the Miller incident during cross-examination of Maurer and his witnesses in order to rebut evidence that Maurer was depressed as a result of his injury. Before this rebuttal could be admitted, the defendants must have produced testimony to the fact that the Miller incident contributed to Maurer's depression and his leaving the ranch.

> [W]hen the admissibility of evidence depends upon proof of other connecting facts, the court may admit such evidence subject to the condition that further evidence be introduced sufficient to support a finding of those connecting facts.

Rule 104(b), M.R.Evid. In Kimes and Newville, we held that evidence of an event which may have contributed to an injury is not admissible unless the evidence establishes a causal connection between the event and the injury. Newville, 883 P.2d at 806; Kimes, 705 P.2d at 110.

11

As we are remanding this case to the District Court for a new trial on compensatory damages for loss of established course of life, the District Court should admit evidence of the Miller incident if such evidence is offered and the proper foundation has been laid.

ISSUE 4

Did the District Court err in denying a new trial on the issue of punitive damages because evidence of Clausen's employees' work-related DUI convictions was excluded?

At trial, the defendants' counsel asked Clausen Distributing's general manager the following:

> During that period of time until Mr. Tucker's work-related DUI, how many other DUIs have your employees had that were work related?

The District Court sustained Maurer's objection to the question.

On the defendants' motion for new trial, the District Court reviewed its ruling and concluded that evidence of whether any of the employees of Clausen Distributing had ever had a work-related DUI was irrelevant. We will review the District Court's denial of a new trial for an abuse of discretion. See Baxter, 895 P.2d at 632.

The defendants assert that prior to Tucker's accident there were no work-related DUIs among Clausen's employees. The defendants claim that evidence to this fact would vindicate Clausen's policy of tolerating drinking on the job and would therefore be relevant to whether punitive damages should be assessed against Clausen. The court, however, found that the

12

jury's award for punitive damages was based on Clausen's conduct in placing Tucker in a position where he was permitted to drink and drive despite Clausen's knowledge of Tucker's two previous DUIs. We have stated that evidence is irrelevant when it does not tend to make any requisite factors for punitive damages more or less probable. Derenberger v. Lutey (1983), 207 Mont. 1, 11, 674 P.2d 485, 489. Accordingly, the DUI records are irrelevant because they do not tend to disprove the egregiousness of Clausen's conduct for which the jury assessed an award of punitive damages.

We therefore conclude the District Court did not abuse its discretion in denying a new trial for admissibility of evidence and hold that the District Court did not err in denying a new trial on the issue of punitive damages.

## ISSUE 5

Did the District Court err in denying a new trial because instructions were given to the jury on Clausen's vicarious liability for punitive damages?

The District Court instructed the jury on vicarious liability. Clausen contends that the pattern instruction given was not intended for punitive damage actions and was thus not appropriate in this case. On a motion for new trial, the court concluded that the instruction was a correct statement of Montana law and giving it was not grounds for a new trial.

The jury returned a verdict against Clausen finding that Clausen should "be assessed punitive damages as a result of its conduct." Clausen's argument that the jury instruction was not

13

appropriate is moot because the jury found Clausen liable for punitive damages based on its own conduct under § 27-1-221, MCA, rather than under a vicarious liability theory. In seeking review of an instruction, the party claiming error must show prejudice in order to prevail. Hall v. Big Sky Lumber & Supply, Inc. (1993), 261 Mont. 328, 332, 863 P.2d 389, 392 (citing Walden v. State (1991), 250 Mont. 132, 818 P.2d 1190). In this case, Clausen was not prejudiced by the court's instruction because the jury did not assess damages against Clausen for Tucker's conduct but for its own.

We will not overturn the court's denial of a new trial absent an abuse of discretion. Baxter, 895 P.2d at 632. We conclude the District Court did not abuse its discretion, and therefore, did not err in denying a new trial because the appropriateness of the instruction was a moot point.

In summary, we reverse the District Court's grant of a new trial on the issue of punitive damages, and we affirm the District Court's grant of a new trial on the issue of compensatory damages for loss of established course of life. We also affirm the District Court's denial of a new trial on the issues of employee work-related convictions and jury instructions. On remand to the District Court for new trial, we direct the court to admit evidence of the Miller incident so long as the proper foundation has been laid.

_____
Justice

14

We concur:

_____
Chief Justice

_____

_____

_____
Justices